374 So.2d 35 (1979)
L. Stanley BERENSON, Appellant,
v.
WORLD JAI-ALAI, INC., and Lloyd's Underwriters, Appellees.
No. 78-1232.
District Court of Appeal of Florida, Third District.
July 17, 1979.
Rehearing Denied September 10, 1979.
*36 Wallace & Breslow and Milton J. Wallace, Miami, for appellant.
Frates, Floyd, Pearson, Stewart, Richman & Greer and James B. Tilghman, Jr., Kelly, Black, Black, Wright & Earle and George W. Wright, Jr., Miami, for appellees.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
HENDRY, Judge.
The question raised by this appeal is whether the trial court erred in entering summary final judgment against appellant, Berenson, and in favor of World Jai-Alai, Inc. and its insurer, Lloyd's Underwriters on Berenson's third-party complaint for indemnification. We have determined that the order should be affirmed.
The main action, seeking compensatory and punitive damages against the appellant, was filed by two individual businessmen, Cooper and Simon, alleging that Berenson unlawfully interfered with Cooper and Simon's business relationship with World Jai-Alai, Inc., one of the appellees herein. The claimed tortious interference by Berenson is alleged to have been caused by Berenson's actions and conduct in "sabotaging" Cooper and Simon's business relationship with World Jai-Alai and attempting to procure it for himself; that is, for his own personal gain and benefit. The complaint in the main action specifically alleges that Cooper and Simon entered into negotiations with World Jai-Alai which culminated in a tentative agreement by World Jai-Alai to lease all its property and businesses to Cooper *37 and Simon as limited partners; that when Berenson learned of the negotiations, he contacted Cooper and Simon to inquire about possible terms and conditions under which they would permit him (Berenson) to participate as a partner with them; that they and Berenson orally agreed to a joint venture whereby Berenson would own twenty-five percent of the venture and would be chief executive officer; that Berenson thereafter frustrated the agreement between plaintiffs and World Jai-Alai by certain words and conduct intended to cause the directors and officers of World Jai-Alai to terminate negotiations with Cooper and Simon; that while Berenson was engaged in the conduct complained of, he was simultaneously attempting to procure the same leasing agreement with World Jai-Alai for himself and to the exclusion of Cooper and Simon. In his answer, appellant/defendant denied the allegations of interference, denied that he did anything to cause World Jai-Alai to terminate negotiations with Cooper and Simon. Berenson further asserted that his status "as the major stockholder, director, officer, employee and agent of World Jai-Alai, as well as his status as a trustee under the agreement and declaration of trust, a document executed in 1975[1], precluded the maintenance of the action because, by virtue of said status, any statements, opinions, or actions by him were privileged."
Subsequently, Berenson filed a third-party complaint against World Jai-Alai and its insurer seeking indemnification for any expenses incurred or money judgment entered against him resulting from the main action. In the third-party action, Berenson alleged that he was entitled to indemnification based upon his status in the organization, the language used in World Jai-Alai's certificate of incorporation, its by-laws, the aforementioned agreement and declaration of trust, as well as upon the provisions of the insurance policy between World Jai-Alai and Lloyd's Underwriters. In their answers to the third-party complaint, World Jai-Alai and Lloyd's, inter alia, denied Berenson's right to indemnification, alleging that he was not acting in any one of his representative capacities at the times material to the main action, and that he was not acting in good faith and in a manner reasonably believed to be in the best interests of World Jai-Alai, Inc.
Motions for summary judgment were filed by the parties, hearing was held, memoranda submitted, and thereafter the trial court rendered the order herein appealed, which states in pertinent part:
"1. That the Motion of Defendant Berenson for Summary Judgment be and the same is hereby denied."
2. That the Motion of Third Party Defendant Lloyd's for Summary Judgment be and the same is hereby granted and Summary Final Judgment be and the same is hereby entered in favor of Lloyd's and against Defendant Berenson, and Berenson shall take nothing by his action against Lloyd's.
3. That Defendant Berenson's claim for indemnification against World for expenses (including attorneys' fees) incurred in defense of the main action by Plaintiffs against Berenson, not being in the nature of a third party claim, is hereby dismissed sua sponte. Said dismissal is without prejudice and with leave to be reasserted when and if Berenson is successful in defeating Plaintiffs' claim against him in the main action.[2]
"4. That, subject to the provisions of paragraph 3 of this Order, the Motion of Third Party Defendant World for Summary Judgment be and the same is hereby entered in favor of World and against Defendant Berenson, and Berenson shall take nothing by his action against World."
*38 On appeal from the order of summary judgment entered in favor of the third-party defendants/appellees in the third-party action, Berenson contends that the trial court erred in finding that he was not entitled to indemnification because: (1) article VII of World Jai-Alai, Inc.'s agreement and declaration of trust provides indemnification for the trustees, and Berenson was a trustee and acted as such at all times material to the main action; (2) he is entitled to indemnification for expenses, including attorneys' fees, from World Jai-Alai in defense of the main action where the issues presented by third-party action are integrally related and substantially similar to the issues raised in the main action; (3) World Jai-Alai's certificate of incorporation and its by-laws provide indemnification for directors, officers, employees and agents; (4) Lloyd's Underwriters' motion for summary judgment should not have been granted, since the insurance policy provides indemnification for a trustee of World Jai-Alai, and Berenson maintains he was acting in that capacity at all times material to the main action.
Appellee, World Jai-Alai, Inc., argues that the entry of summary judgment was not, as appellant urges it was, a matter of disputed versus undisputed issues of material fact, but was rather a matter of viewing all possible combinations of claims in light of the law of interference with contract or advantageous business relationships. The appellee discusses the two elements of the subject tort. The first is that the interference by the defendant must be for the purpose of securing a business advantage for himself over the plaintiff.[3] The second is that the interference must be by a third party and not by a party to the contract or business relationship.[4] This appellee further argues that none of appellant's claimed capacities (that of an officer, director, agent, representative or trustee) has legal viability in the context of the main suit. Appellee elucidates by pointing out that if Cooper and Simon prevail in the tortious interference action, they will have necessarily proved that appellant was acting for himself to gain a direct advantage over them and was not acting within the scope of any one of the claimed capacities within the corporate organization of World Jai-Alai. Of course, the converse is true in that if Berenson's actions are found to be those of World Jai-Alai and not directed toward gaining a direct, personal business advantage over Cooper and Simon, he will be entitled to judgment, after which Berenson may pursue his claims for fees and expenses from World Jai-Alai.[5] However, appellee correctly asserts that at this stage of the proceedings it would be legally untenable to find that Berenson has indemnification rights against World Jai-Alai, as it would constitute a totally inconsistent legal stance in relation to the pending main action initiated by Cooper and Simon (who are seeking a judgment for which World Jai-Alai would, according to appellant's reasoning, be obligated to indemnify the defendant/appellant herein).
World Jai-Alai further contends that appellant's claim against it for costs and attorneys' fees incurred in defense of the main action was correctly dismissed (without prejudice, [thus, preserving appellant's right to make the claim at a later time, if appropriate]), since the claim does not constitute a proper third-party complaint. See Mandala v. Sarrow, 234 So.2d 14 (Fla. 4th DCA 1970) and Fla.R.Civ.P. 1.180(a). We concur with the legal rationale espoused. *39 We must now look to the assertions advanced by Lloyd's Underwriters regarding the provisions of the insurance policy. This appellee states that the appellant has ignored the existence and reality of the well-established principle that if the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations by the court.[6] The subject policy reads in its insuring clause:
"This policy shall, subject to its terms, conditions and limitations as hereinafter provided, pay on behalf of each and every person who was or now is or may hereafter be a Director or Officer of the Company who is included in the meaning of those terms as defined in Clause 2(a) of this Policy (who are hereinafter individually or collectively sometimes called the `Assureds') loss (as hereinafter defined) arising from any claim or claims made against the Assureds, jointly or severally, during the policy period or any Wrongful Act (as hereinafter defined) in their respective capacities of Directors or Officers."
"Loss" is defined as:
"[A]ny amount an Assured is obligated to pay in respect of his legal liability, whether actual or asserted, for a Wrongful Act ... and, subject to the applicable limits and conditions of this policy, shall include damages, judgments, settlements and costs, charges and expenses incurred in the defense of actions, suits or proceedings and appeals therefrom; provided always that such subject of loss shall not include fines or penalties imposed by law or other matters which are uninsurable under the law to which this policy shall be construed."
The policy defines the term "Wrongful Act" to mean:
"[A]ny breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the Assureds or any of the foregoing so alleged by any claimant or any matter claimed against them solely by reason of their being such Directors or Officers of the Company."
Further, the exclusionary clause provides:
"Underwriters shall not be liable to make any payment in connection with any claim made against the Assureds: (a) for libel or slander; (b) based upon or attributable to their gaining in fact of any personal profit or advantage to which they were not legally entitled ..."
By an endorsement, the policy also provides that:
"It is understood and agreed that wherever the term `Director(s)' or `Officer(s)' appears in the policy, this shall be deemed to include `Trustee(s).'"[7]
Lloyd's concludes its argument on this point by referring the court to the specific allegations contained in the complaint (and amended complaint) in the main action and stresses that nowhere have the plaintiffs, Cooper and Simon, alleged or contended, even by inference, that Berenson was acting in the capacity of an officer, director, agent or trustee. The record clearly supports this position.
Lloyd's next addresses the correctness of the trial court's having determined that if a judgment is ultimately entered against Berenson in the main action, he cannot recover against Lloyd's on his third-party action because he will have necessarily been found not to have been acting in any one of the capacities previously discussed. The elements of the tort of unlawful interference with a business relationship, as stated in International Funding Corp. v. Krasner, 360 So.2d 1156 (Fla. 3d DCA 1978), citing from *40 Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA 1971) at 280, are:
"(1) [T]he existence of a business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with the relationship by the defendant, and (3) damage to the claimant as a result of the breach of the business relationship."
The "intentional and unjustified" interference element is further broken down to require that the interference by the defendant be to secure some sort of business advantage directly over the plaintiff. Thus, if Cooper and Simon are to recover against Berenson in their action, they will have to establish all the elements  including that the interference was "unjustified." It is precisely the necessity that plaintiffs must prove the fact that the alleged interference was "unjustified" that now precludes Lloyd's from bearing any liability under the insurance policy provisions.[8]
In conclusion, we affirm the trial court's order on the basis that appellant failed to state a proper third-party claim. We also recognize the trial court's rationale in dismissing the claim without prejudice, for as conceded by appellee, World Jai-Alai, Inc., if Berenson as the defendant, prevails in the tortious interference action, he may then proceed to seek costs, expenses and attorneys' fees at that time. The wording of the subject order reflects that Berenson may reassert such claim against World Jai-Alai (if consistent with the future verdict of the trial court in the main action),[9] but it was an apodictally premature claim in light of the allegations lodged against the appellant in the main action.
Affirmed.
NOTES
[1] On January 28, 1975 Berenson and members of his immediate family placed their combined 502,200 shares of stock into a voting trust entitled "World Jai-Alai, Inc. Agreement and Declaration of Trust." Berenson is the major stockholder in the corporation.
[2] The trial court, in effect, preserved appellant's right to reassert the claim as to World Jai-Alai's alleged obligation to Berenson for costs and attorneys' fees in defending the main action.
[3] Hales v. Ashland Oil, Inc., 342 So.2d 984 (Fla. 3d DCA 1977).
[4] Covert v. Terri Aviation, Inc., 197 So.2d 12 (Fla. 3d DCA 1967) and Paradise Shores Apartments, Inc. v. Practical Maintenance Co., Inc., 344 So.2d 299 (Fla. 2d DCA 1977).
[5] The record reflects that the corporation's Certificate of Incorporation and its by-laws contemplate payment of fees and expenses based upon a decision by the board of directors, the stockholders, or upon advice of counsel. Therefore, if appellant is later in a position which enables him to reassert such claim it will be dealt with as above-mentioned. A civil court action can be considered a "last resort" under said circumstances.
[6] Rigel v. National Casualty Company, 76 So.2d 285 (Fla. 1954) and Winter Garden Ornamental Nursery, Inc. v. Cappleman, 201 So.2d 479 (Fla. 4th DCA 1967); United States Fire Ins. Co. v. Morejon, 338 So.2d 223 (Fla. 3d DCA 1976).
[7] Lloyd's makes the point that there has been no dispute that the policy covers trustees of the voting trust for the same loss as it covers for directors and officers; but again, as with directors and officers, it covers for loss arising solely from claims made against trustees, acting in that capacity.
[8] Under Florida law the interference with the business relationship in order to be "unjustified" must be committed by a third person. Paradise Shores Apartments, Inc., supra.
[9] See footnote 5.