463 So.2d 1126 (1985)
TAMIAMI TRAIL TOURS, INC., a Florida Corporation, and D.C. Crosby, Petitioners,
v.
J.C. COTTON and Aubrey Jesse Cotton, Respondents.
No. 63946.
Supreme Court of Florida.
January 10, 1985.
Rehearing Denied March 14, 1985.
Albert M. Salem, Jr. of Salem, Musial & Morse, Tampa, for petitioners.
Woodburn S. Wesley, Jr., of Cotton, Wesley & Poche, Shalimar, and Stanley Bruce Powell of Stanley Bruce Powell, P.A., Niceville, for respondents.
*1127 PER CURIAM.
This is a petition to review Tamiami Trail Tours, Inc. v. Cotton, 432 So.2d 148 (Fla. 1st DCA 1983), on the ground that it conflicts with Berenson v. World Jai-Alai, Inc., 374 So.2d 35 (Fla. 3d DCA 1979), Hales v. Ashland Oil, Inc., 342 So.2d 984 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1214 (Fla. 1978), and John B. Reid & Associates, Inc. v. Jimenez, 181 So.2d 575 (Fla. 3d DCA 1965). We have jurisdiction, Article V, section 3(b)(3), Florida Constitution, and we approve the decision in part and disapprove it in part.
Petitioners were sued by respondents in a two-count complaint. Count I alleged tortious interference and conspiracy to interfere tortiously with a business relationship of respondent, J.C. Cotton. Tamiami was joined in Count I on the basis of an alleged agency relationship. The count included William Stowe d/b/a City Cab Company as a defendant. A directed verdict was entered in Stowe's favor. Count II alleged that Crosby had committed an assault and battery on A.J. Cotton in the course of the tortious interference with the business relationship. Tamiami was not expressly joined in this count.
The evidence presented at trial is set forth more fully in the district court opinion. For our purposes, it is enough to say that there was evidence that Crosby, who was the manager of Tamiami's Fort Walton Beach bus station, committed numerous tortious acts which interfered with J.C. Cotton's attempts to furnish taxicab service to bus passengers and also assaulted and battered A.J. Cotton. There was evidence tending to show that the tortious acts occurred both on and adjacent to the Tamiami bus station. The evidence also tended to show that J.C. Cotton persistently informed Tamiami of the early instances of Crosby's misconduct and that Tamiami's response was tepid and ineffective. The jury returned verdicts on both counts, assessing compensatory and punitive damages against both petitioners.
Petitioners presented nine points on appeal to the district court. The district court affirmed on all nine points but determined that only points one and five merited discussion. Point one is the issue in conflict. The district court canvassed the law on pleading a prima facie case of tortious interference with a business relationship and determined that four elements were required to establish such a case: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. Cases were cited in support from the First, Second, and Fourth District Courts[1] and one case from this Court, Dade Enterprises, Inc. v. Wometco Theatres, Inc., 119 Fla. 70, 160 So. 209 (1935). The district court rejected petitioners' argument that element number 3 (intentional and unjustified interference with a business relationship) required a showing that the interference was intended to secure a business advantage over the plaintiff. The district court recognized that its rejection conflicted with the position of the Third District Court of Appeal. This point of law was critical to respondents' case because there was no evidence or suggestion that Tamiami or Crosby received any business advantage from Crosby's interference with respondents' taxicab service.
We approve that portion of the decision of the district court and, to the extent they conflict, disapprove the decisions of the Third District Court of Appeal in Hales, John B. Reid & Associates, Inc., and Berenson. This issue is controlled by our decision in Dade Enterprises which does not require that the plaintiff in such suit establish that the defendant interfered with the business relationship in order to secure a *1128 business advantage. It may well be that most such cases will involve proof that the defendant's motive was to secure a business advantage and, thus, that the interference was intentional. However, we see no logical reason why one who damages another in his business relationships should escape liability because his motive is malice rather than greed. The action is tortious, regardless of motive.
Next petitioners argue that the jury returned a verdict showing that Crosby was not acting within the scope of his employment when he committed the tortious acts and, thus, that Tamiami cannot be assessed punitive damages absent a showing of wanton and willful conduct on its part. The record shows that the jury was instructed that Tamiami could be held liable for the tortious acts of Crosby under two theories: (1) vicarious liability as a principal for the actions of its agent acting within the course and scope of his employment, or (2) as a possessor of property who fails to control the actions of its servant on the property, even though the servant is acting outside the course and scope of his employment. The jury found Tamiami liable under the second theory. However, this issue was nowhere framed in the pleadings.
The complaint alleged Tamiami's liability only on the theories of conspiracy and agency. The conspiracy allegation was dismissed by the trial court upon defense motion after the close of plaintiff's case-in-chief. The defense was first apprised of the new theory of liability under which plaintiff sought damages from Tamiami at the charge conference after all the evidence had been entered.
The defense attorney repeatedly objected to both the charge and the special interrogatory on the verdict which allowed finding Tamiami liable for Crosby's actions outside the scope of his employment. No motion was ever made to conform the pleadings to the evidence, nor were the pleadings ever amended to include this theory. In short, Tamiami was sandbagged. It proceeded to trial on notice that it had to defend against charges of tortious interference with a business relationship for actions attributable to it on theories of conspiracy or agency. It won verdicts absolving it of liability on both theories. It was found liable on a theory it never had an opportunity to rebut at trial. While the theory itself is the law of the state, the procedural requirements of due process will not allow it to be raised in this manner.
Turning to Count II, we find even more serious problems. Primarily, inclusion of Counts I and II in the same complaint creates a misjoinder of claims and a misjoinder of parties. Count I embodies J.C. Cotton's claim for tortious interference with a business relationship; Count II sets forth Aubrey Cotton's claim for battery, albeit by and through his father as next friend. The causes of action were entirely separate. The interests of the parties plaintiff were not identical. This fact is acknowledged in the verdict from itself which names J.C. Cotton only as plaintiff in Count I and Aubrey Cotton only as plaintiff in Count II. Nor can the pro forma incorporation by reference of all of Count I into the first paragraph of Count II cure this defect. Count I as plead was irrelevant to Count II.
The problems concerning Tamiami's vicarious liability discussed above are exacerbated here. Tamiami is never named as a party defendant in Count II. To the extent the wholesale incorporation of Count I may allege liability, it can only be on the theories alleged in Count I. Tamiami was found to be free of liability on either theory.
We therefore remand with directions to the trial court to vacate and set aside those portions of the judgment imposing liability on Tamiami Trail Tours for both compensatory and punitive damages.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
*1129 SHAW, J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
SHAW, Justice, concurring in part and dissenting in part.
I concur with the portion of the majority opinion dealing with the required elements of pleading a prima facie case of tortious interference as well as that portion exempting Tamiami from liability under Count II of the amended complaint.
I disagree with the portion holding that Tamiami Trial Tours could not be held liable under Count I "as a possessor of property who fails to control the actions of its servants on the property, even though the servant is acting outside the course and scope of employment."
Rule 1.190(b), Florida Rules of Civil Procedure provides:
(b) Amendments to Conform with the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice him in maintaining his action or defense upon the merits.
(Emphasis supplied.)
The majority opinion recognizes that in Florida a cause of action may be stated against the possessor of property who fails to control the actions of its servants on the property even though the servant is acting outside the course and scope of his employment, but concludes that the plaintiff in this instance should be denied recovery because of failure to plead or apprise the defendant Tamiami of this theory until the trial conference; ergo, Tamiami was sandbagged and denied due process. I respectfully disagree. If rule 1.190(b) has any vitality, it would appear to be tailor-made to cover this very eventuality. Tamiami was named as a party defendant and evidence in support of alternate liability was allowed to go before the jury. It was undisputed that Crosby as the agent/manager of the Fort Walton Tamiami Bus Station was given control of the station by Tamiami. There was evidence that he used his authority and position as manager to commit various torts on and adjacent to the premises which interfered with respondent's business operations. Tamiami was repeatedly informed of Crosby's misconduct by more than one person[1] and failed to take proper corrective action. In other words, there was evidence sufficient to support a jury conclusion that Crosby, by virtue of his position as agent/manager, was engaging in conduct dangerous to members of the general public; that the employer, Tamiami, had notice of such conduct and the ability to control the agent in such a way as to substantially reduce the probability of harm to other persons and failed to do so. With this evidence before the jury, the judge properly instructed on the liability of a possessor of property who fails to control the actions of its servants on the property, even though the servant is acting outside the course and scope of his *1130 employment. McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970). I see no reason why this Court should rewrite the trial script. I would therefore let stand the judgment in Count I as an issue tried pursuant to rule 1.190(b).
ADKINS, J., concurs.
NOTES
[1] Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976); Nichols v. MoAmCO Corp., 311 So.2d 750 (Fla. 2d DCA 1975); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla. 1971); Franklin v. Brown, 159 So.2d 893 (Fla. 1st DCA 1964).
[1] Respondent Cotton had an arrangement with a local hospital whereby he picked up blood supplies from incoming buses at all hours of the day for expeditious delivery to the hospital. A manager of the hospital testified that Crosby interfered with this arrangement and that when she questioned Crosby about this interference, Crosby was profanely abusive, i.e., he cursed her out. The manager testified that she phoned Tamiami's regional office in Tallahassee to complain of Crosby's behavior and was profusely thanked for reporting the incident because Tamiami was concerned about its public image.