THOMPSON, Judge, concurs and dissents.
I concur with the majority in finding the trial court did not err in instructing the jury that the issue was whether Dr. Gold-schmidt was negligent in diagnosing the medical symptoms of Jerri Taletha Holman and that the trial court did not err in confining the testimony of Dr. Garoni to damages and prognosis. I dissent, however, from the majority’s finding that the trial court erred on the remaining two issues and from their remand for a new trial. I would also affirm the trial court on these issues.
The appellants contend, and the majority agrees, that the trial court erred in not permitting the jury to consider whether Dr. Goldschmidt was responsible for any malpractice of Dr. Soud in providing health care services on August 14 to Taletha.
The majority states that, contrary to the trial court’s ruling, the allegations contained in paragraphs 7, 14, and 15 of the complaint were sufficient to allow the appellants to raise at the instruction conference, after both parties had rested, the issue of whether Dr. Goldschmidt was vicariously liable for Dr. Soud’s August 14 actions or inactions regarding the minor plaintiff. Paragraphs 7, 14 and 15 fail to mention Dr. Soud or any negligence on his part, and merely provide as follows:
7. On August 14, 1983, Sandra Gail Holman called the office of Mark N. Goldschmidt, M.D. from her home and related that her child, Jerri Taletha Hoi-man, had the same symptoms except she was definitely worse and there was no urination or bowel movement. There was no indication given to Sandra Gail *510 Holman that her child was in need of further medical treatment.
14. Notwithstanding said agreement and undertaking, Mark N. Goldschmidt, M.D. rendered medical care and treatment to the minor plaintiff in a manner described in the previous paragraphs which is a departure from the accepted and reasonable standards of medical care and treatment for physicians in such cases.
15. Jerri Taletha Holman received negligent care and treatment consisting of a failure by Mark N. Gold-schmidt, J.D. to diagnosis [sic] her symptoms as appendicitus [sic] and failing to alert Sandra Holman about the need of additional medical care.
(Emphasis added.) There is nothing in the above-quoted allegations that give the defendant even a hint that the plaintiffs were suing him for the negligence of his alleged agent Dr. Soud.
The only allegation of negligence was that Dr. Goldschmidt rendered medical care and treatment to the minor plaintiff that was a departure from the accepted and reasonable standards of medical care and treatment for physicians in such cases. The negligent care and treatment alleged consisted of the failure of Dr. Goldschmidt to diagnose Taletha’s symptoms as appendicitis and his failure to alert her mother about the need for additional medical care. The only person who ever examined and diagnosed the minor plaintiff was Dr. Gold-schmidt. Dr. Soud never examined or made a diagnosis of the minor plaintiffs condition and I cannot conceive how the. quoted paragraphs could be construed to place anyone on notice that the plaintiffs were claiming Dr. Goldschmidt was vicariously liable for some different negligence committed by another person. Even if the majority is of the opinion that the allegations were sufficient to allow the appellants to raise the issue, the trial judge ruled that they were not, and his decision should not be reversed except upon a showing of an abuse of his judicial discretion. An appellate court should not substitute its judgment for that of the trial judge under the circumstances of the instant case.
The plaintiffs' requested instruction, which the trial judge allegedly erred in failing to give, is as follows:
I hereby instruct you that the defendant, Mark N. Goldschmidt, M.D., is responsible for any negligence of his agent, Dr. Gary Soud, on August 14, 1983, in providing health care services for Taletha Holman.
The trial judge rejected the requested instruction saying that not only did the plaintiff fail to allege or plead that Dr. Soud was the agent of Dr. Goldschmidt or that any other relationship existed between them, but further that there was no evidence adduced that Dr. Soud was the agent of Dr. Goldschmidt. As found by the trial court, there is not one iota of evidence in the record to show Dr. Soud was the agent, servant or employee of Dr. Goldschmidt or that any other relationship existed between the parties that would render Dr. Gold-schmidt vicariously liable for the negligence, if any, of Dr. Soud. The trial judge would have committed reversible error if he had given the instruction and he correctly rejected it.
The complaint was filed August 9, 1985. Almost two years later, in July of 1987, after substantial discovery, the parties entered into a pretrial stipulation in which the parties stipulated as to the nature of the action as follows:
The plaintiffs contend the medical care and attention provided did not meet the accepted and reasonable standard of medical care and treatment for physicians in such cases. As a consequence of this alleged negligence the Holmans contend there was a delay in the diagnosis of appendicitis.
They further stipulated to the following issue of fact:
■ Whether or not Dr. Goldschmidt was negligent in the medical care which he provided to Taletha Holman by deviating from the accepted standard of medical care and treatment for physicians in such cases. If negligent, what damages were proximately caused by the negligence. *511 Under the section on amended pleadings they stipulated “none.” Again, there is no mention of any negligence by Dr. Soud and no mention of any issue as to any relationship between Dr. Soud and Dr. Gold-schmidt which would render Dr. Gold-schmidt liable for the acts of Dr. Soud. There was also no amended pleading or motion to amend the pleadings to add Dr. Soud as a party, or to allege any negligence on his part, and to allege Dr. Gold-schmidt was liable for that negligence. The pretrial conference was held July 1, 1987, 12 days prior to the trial. Substantial discovery had been conducted prior to the pretrial including the taking of the depositions of Dr. Soud and Dr. Gold-schmidt, and if the plaintiffs intended to change their theory of liability, they should have sought leave to amend their pleadings either before, or at least at, the pretrial conference in order that the defendant could amend his pleadings and prepare to defend his liability for the different negligent acts of another person. Our rules of civil procedure are designed to prevent lawyers from playing “gotcha” games in the trial of cases. At no time subsequent to the pretrial and prior to trial did the plaintiffs seek to amend their complaint, and the case went to trial on the sole issue of the negligence of Dr. Goldschmidt in failing to diagnose the minor plaintiffs condition as appendicitis. It was only at the instruction conference after both sides had rested that the appellants sought an instruction that changed their theory of liability.
The only ease the majority cites as authority for the proposition that the appellants were entitled to an instruction that Dr. Goldschmidt was responsible for any negligence of his agent, Dr. Soud on August 14, 1983, is a contract case, Maestrelli v. Arrigoni, Inc., 476 So.2d 756 (Fla. 5th DCA 1985). The majority admits that there is no Florida court decision (and apparently there is none in the United States) that has held that the agency of one acting for a principal must be explicitly pleaded in a tort case. But the majority states it cannot perceive any reason or rationale for applying a different rule. Maestrelli, the case expressly relied upon, clearly distinguishes between agency in a contract case and in a tort case. In Maestrelli the court held:
The defendant argues on appeal that the plaintiff erred in not alleging in his complaint that the third person was acting as agent for the defendant and that he should not be found liable on a theory of liability not framed by the pleadings, citing Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla.1985). We affirm.
A principal’s liability for the acts of his agent is not a “theory of liability”, in the sense of a cause of action, such as debt or express or implied contract that must be pleaded to invoke the trial court’s subject matter jurisdiction and to meet due process notice requirements. As a general rule, one suing upon a contract made for the defendant by an agent need not refer to the agency in the complaint but may merely allege the legal effect of the agent’s action by averring that the contract was made by the principal himself.
Id. at 757. (Emphasis added.) The Maes-trelli court merely held that one suing on a contract made for the defendant by an agent need not specifically allege that the third party was acting as agent for the defendant and it distinguished its contract case from the tort case of Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla. 1985). In Tamiami Trail Tours our Supreme Court clearly and specifically held that attempting to hold a principal vicariously liable for the tortious acts of an agent was a theory of liability saying:
Next petitioners argue that the jury returned a verdict showing that Crosby was not acting within the scope of his employment when he committed the tor-tious acts and, thus, that Tamiami cannot be assessed punitive damages absent a showing of wanton and willful conduct on its part. The record shows that the jury was instructed that Tamiami could be held liable for the tortious acts of Crosby under two theories: (1) vicarious liability as a principal for the actions of its agent acting within the *512 course and scope of his employment, or (2) as a possessor of property who fails to control the actions of its servant on the property, even though the servant is acting outside the course and scope of his employment. The jury found Tamia-mi liable under the second theory. However, this issue was nowhere framed in the pleadings.
The complaint alleged Tamiami’s liability only on the theories of conspiracy and agency. The conspiracy allegation was dismissed by the trial court upon defense motion after the close of plaintiffs case-in-chief. The defense was first apprised of the new theory of liability under which plaintiff sought damages from Tamiami at the charge conference after all the evidence had been entered.
The defense attorney repeatedly objected to both the charge and the special interrogatory on the verdict which allowed finding Tamiami liable for Crosby's actions outside the scope of his employment. No motion was ever made to conform the pleadings to the evidence, nor were the pleadings ever amended to include this theory. In short, Tamiami was sandbagged. It proceeded to trial on notice that it had to defend against charges of tortious interference with a business relationship for actions attributable to it on theories of conspiracy or agency. It won verdicts absolving it of liability on both theories. It was found liable on a theory it never had an opportunity to rebut at trial. While the theory itself is the law of the state, the procedural requirements of due process will not allow it to be raised in this manner.
Id. at 1128. (Emphasis added.) Except for the trial court’s ruling, Tamiami Trail Tours, Inc. is almost factually identical to the instant case in that the first time the defendant was apprised of the new theory of liability under which the plaintiffs sought damages was at the charge conference after all evidence had been entered. However, in Tamiami the trial court agreed to give the plaintiffs’ requested charge on their new theory of liability. The supreme court held that giving the instruction was erroneous and vacated the judgments against Tamiami.
Another similar case is Designers Tile International v. Capitol C Corp., 499 So.2d 4 (Fla. 3d DCA 1986), wherein the court held that the plaintiff was improperly permitted to amend its complaint after the case had been fully tried on plaintiff’s claim against defendants for negligent hiring of a third party. The plaintiff sought and was permitted by the trial judge to allege a new cause of action against the defendants for vicarious responsibility for the negligence of a third party, but the district court held that the allowing of the amendment changed the cause of action and constituted a material change which, under the facts of that case, greatly prejudiced the defendants.
In the more recent case of Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988), the Supreme Court of Florida reversed a judgment entered in favor of Bowmar on its counterclaim. In that case Arky, Freed filed suit against Bowmar for attorney’s fees for services rendered in a previous representation of Bowmar. Bowmar counterclaimed based on the alleged general negligence of Arky, Freed in their representation. Twelve days before the trial Bowmar disclosed its intention to specifically claim that Arky, Freed had negligently failed to assert and prove a particular defense. Arky, Freed immediately moved for a continuance or in the alternative to exclude all evidence relating to this belated claim. The motion for a continuance and the motion to exclude evidence of this specific claim were heard and denied by the trial court. On appeal the Third District found that the trial court erred in deciding that the general allegations stated a cause of action for Arky, Freed’s specific failure to present the defense requested by Bowmar and that the trial court acted improperly in failing to grant a continuance since Arky, Freed was unable to prepare an adequate defense. The Third District rejected Arky, Freed’s request to order the trial court to direct a verdict in its favor. Our supreme court *513 reversed the Third District and remanded with instructions to order a verdict be directed in favor of Arky, Freed saying:
For the same policy reasons underlying Dober [v. Worrell, 401 So.2d 1322 (Fla.1981) ], we conclude that litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared. Our growing, complex society and diminishing resources mandate the requirement that litigants present all claims to the extent possible, at one time, and one time only. We disapprove the opinion of the Third District below to the extent it conflicts with this decision, and approve the opinions in Freshwater [v. Vetter, 511 So.2d 1114 (Fla. 2d DCA 1987)], Designers Tile [International Corp. v. Capitol C Corp., 499 So.2d 4 (Fla. 3d DCA 1986) review denied, 508 So.2d 13 (Fla.1987)], Dean Co. [v. U.S. Home Corp. Inc., 485 So.2d 438 (Fla. 2d DCA 1986)] and Citizens National [Bank v. Youngblood, 296 So.2d 92 (Fla. 4th DCA 1974)]. On remand, the district court shall order that a verdict be directed in favor of Arky, Freed.
Id. at 563. If it is error to amend or add a cause of action 12 days before trial it is necessarily error to permit amendment or addition of a new cause of action after all evidence is in. This is made absolutely clear by the dissent in Arky, Freed in which Justice Grimes states:
In each of the cases cited for conflict, there was no effort to amend the pleadings to state a new cause of action until after the plaintiff had presented its evidence. In each instance, the court properly held that to permit an amendment at this point would unfairly prejudice the defendant.
The instant case is much different. Twelve days before the commencement of the trial, Bowmar disclosed that it intended to prove at trial a theory which was arguably beyond the scope of the allegations of its counterclaim. Arky, Freed moved for a continuance on the ground that it did not have adequate time to prepare to defend against the new claim. The trial judge ruled that Bowmar’s new claim was sufficiently embraced within the existing counterclaim and denied the motion for continuance.
I do not quarrel with the conclusion that the new claim went beyond the allegations of the counterclaim and that a continuance should have been granted....
Id. (Emphasis added.) Even the dissent in Arky, Freed agrees that the cases relied on by the majority, in which there was no effort to amend the pleadings to state a new cause of action until after the plaintiff had presented its evidence, properly held that to permit amendment would unfairly prejudice the defendant. Yet the majority opinion in the instant case would permit such amendment contrary to both the majority and dissenting opinions in Arky, Freed. Under the decision in Arky, Freed if the trial court had given the requested instruction it would have been error because it constituted the allowance of a prejudicial new cause of action at that late date, and on appeal the case would have been reversed and remanded with instrue-tins to enter a verdict for Dr. Goldschmidt. It is difficult to conceive under these circumstances how it is reversible error to correctly refuse to give such an instruction. The trial judge properly refused to give the plaintiffs’ requested instruction at the close of all evidence because the effect of it would be to allow a new and unpleaded cause of action to be asserted against the defendant based on alleged vicarious liability for the negligence of a third party.
The majority opinion also states that the parties tried the issue by express or implied consent. I do not concur in this finding, and the trial judge who heard all of the testimony did not accept the plaintiffs’ assertion in this regard. As pointed out by this court in Bilow v. Benoit, 519 So.2d 1114 (Fla. 1st DCA 1988):
Rule 1.190(b) provides, however, that “when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” But in order to rely on questions and answers not objected to *514 during trial as evidencing the opposing party’s implied consent to try unpled issues, it must be shown that such questions and answers are irrelevant to any pled issues; the failure to object cannot be taken as implied consent to try unpled issues when there is no occasion for such party to object that such evidence is irrelevant to the issues being tried. Wassil v. Gilmour, 465 So.2d 566 (Fla. 3d DCA 1985); Dysart v. Hunt, 383 So.2d 259 (Fla. 3d DCA), review denied, 392 So.2d 1373 (Fla.1980). Rule 1.190(b) is not intended to permit a party to catch an opposing party by surprise and inject new, unpled issues in the case after the evidence is closed.
Id. at 1116. (Emphasis added).
There is no evidence in the record that Dr. Soud was the agent of Dr. Goldschmidt or that any relationship existed between the two doctors that could be a basis to hold Dr. Goldschmidt liable for any negligence of Dr. Soud. Although Dr. Abra-hamson may have been qualified to testify as to whether Dr. Soud deviated from the appropriate standard of care,[10] he is not qualified to testify that Dr. Goldschmidt was responsible for Dr. Soud’s alleged negligence. Since Dr. Soud was not a party to the lawsuit and there was no allegation he committed any acts of negligence for which Dr. Goldschmidt would be liable, there was no reason for Dr. Goldschmidt to object to the testimony concerning the negligence of Dr. Soud. This evidence merely allowed defendant Goldschmidt to point to the “empty chair” and say the fault, if any, was that of Dr. Soud. In Tucker v. Daugherty, 122 So.2d 230 (Fla. 2d DCA 1960), it was contended that by express or implied consent, the parties tried a different cause of action from the cause of action alleged in the complaint. In Tucker the plaintiff sued the vendors of a rock-crushing machine for personal injuries on the theory of negligence of the defendants. The plaintiff rested without proving the negligence alleged. The defendants moved for directed verdict but the trial court permitted the plaintiff to amend the pleadings to conform to the proof on the theory of volunteer or Good Samaritan cases. The court said:
In this we think the trial court erred. It has been held in a negligence case that where the plaintiffs were not proceeding on the acts of negligence alleged in the complaint and the defendants could not discern this until the conclusion of the plaintiffs’ case, it could not be said that the defendants had expressly or impliedly consented to a different ground for the action being proven. Edwards v. Young, Fla.App.1958, 107 So.2d 244.
Id. at 232. (Emphasis added.) In the instant case there was no way the defendant could tell until the close of all evidence and the request for jury instructions on the question of agency that the plaintiff was not proceeding on the basis of the act of negligence alleged in the complaint.
A trial judge’s discretion to allow an amendment to state a new cause of action, which is precisely what the plaintiffs sought to do in this case by their requested instruction relating to the liability of Dr. Goldschmidt for the alleged negligent acts of Dr. Soud, is very limited. As stated by the court in Freshwater v. Vetter, 511 So.2d 1114 (Fla. 2d DCA 1987):
If evidence is introduced as to facts or issues not presented in the pleadings, the court, in its discretion, may allow amendments to conform to the evidence. Fla. R.Civ.P. 1.190. However, amending to state a new cause of action should not be allowed over objection. Triax, Inc. v. City of Treasure Island, 208 So.2d 669 (Fla. 2d DCA 1968); Tucker v. Daugherty, 122 So.2d 230 (Fla. 2d DCA), cert. denied, 125 So.2d 878 (Fla.1960). We think the trial judge abused his discretion in this case by allowing Freshwater to amend his pleadings to state a cause of action against Vetter individually on a fraud theory after the close of Freshwater’s case against Vetter which had been *515 pled on basis of Vetter being the alter ego of Royal Cove.
Id. at 1115. (Emphasis added.) A review of the foregoing cases makes it obvious why the majority cannot find a tort case to support its position. As applied to tort actions, its holding is an incorrect statement of the law unsupported by any case law. The numerous tort cases cited above are applicable to this case and mandate a contrary result.
In the majority opinion it is stated that the attorney for Dr. Goldschmidt knew the plaintiffs were contending Dr. Goldschmidt was vicariously liable for the negligence of Dr. Soud because Dr. Abrahamson had testified that Dr. Soud was negligent and that he was acting as the agent of Dr. Gold-schmidt. In addition, Dr. Abrahamson’s opinion that Dr. Soud was negligent was based on the minor plaintiffs mother’s version of the phone call to Dr. Soud which was in complete conflict with Dr. Soud’s version. Again, I can see no way that the testimony of a doctor as to a legal conclusion of the existence of an agency is competent substantial evidence to establish that conclusion. Dr. Abrahamson’s testimony was given by deposition a week before the pretrial conference. If Dr. Goldschmidt’s attorney should have known that the plaintiffs were contending that Dr. Soud was Goldschmidt’s agent, then the complaint should have been amended at that time or at pretrial because the plaintiffs similarly must have known such was their contention. Notwithstanding this fact, the complaint was not amended at the time of the deposition, nor was it amended subsequently at the pretrial conference at which time the parties stipulated that the only issue was the negligence of Dr. Goldschmidt in failing to diagnose the appendicitis. No amendment or motion for leave to amend was made prior to trial. As in the Tamia-mi case, the defendant in the instant case would have been “sandbagged” if the trial judge had given the requested instruction that Dr. Soud was the agent of Dr. Gold-schmidt and that Dr. Goldschmidt was liable for Dr. Soud’s negligence.
This dissent is a rather lengthy detailed reply to a lengthy majority opinion. If it were not for the majority opinion reversing the trial court on the first issue, I would dispose of the appellants’ contention in the same succinct one paragraph that the majority uses to affirm the trial judge on the third issue, in which the appellants contend that the trial judge erred in refusing their requested instruction that Dr. Gold-schmidt’s negligence was in “evaluating” rather than “diagnosing” the minor appellant’s condition. The majority stated on that issue:
Appellants assert that the use of the word “diagnose” instead of “evaluate” in the requested instruction stripped them of their theory of the case and was tantamount to a directed verdict. We find no abuse of discretion in the court’s refusal to give the instruction requested by the appellants. Although the jury instruction the court selected held appellants to a more burdensome degree of proof in establishing negligence on the part of Dr. Goldschmidt, it was consistent with appellants’ charge against the appellee in the complaint, the issue presented in the pretrial stipulation, and the testimony elicited from the witnesses of both parties regarding Dr. Gold-schmidt’s duty to diagnose Taletha’s medical condition.
(Emphasis added). This statement applies the correct standard of review by an appellate court and is a correct statement of the law applicable to the first issue as well as the third.
The majority also finds that the trial court erred in denying the plaintiff’s request that the jury be charged with Standard Jury Instruction 5.1(b) on concurrent cause. I disagree. The failure to diagnose Taletha’s symptoms as appendicitis and the fact she had appendicitis is not a concurrent cause of her injury and damage, it is the legal cause of her injury and damage. The charge on concurrent cause was not proper under the evidence adduced in this case. The note on use of Charge 5.1(b) provides as follows:
Charge 5.1 b. (Concurring cause) to be given when the court considers it necessary, does not set forth any additional *516 standard for the jury to consider in determining whether negligence was a legal cause of damage but only negates the idea that the defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage.
(Emphasis added). Instruction 5.1(b) was never intended to be used under the circumstances presented by the instant ease. This is made clear in the following excerpt from the charge conference by the trial judge who is and has been for a number of years a member of the Supreme Court Committee for Standard Jury Instructions (Civil).
THE COURT: 5.1(b), defendants want to be heard on that?
MR. HOWELL: Which one is that, Judge?
THE COURT: This is concurring cause. MR. HOWELL: Yeah. I don’t think there’s any evidence of any concurring cause or anything else in this case. THE COURT: Well, let me tell you the thing that concerns me about 5.1(b), there are several cases out now that say that 5.1(b) should be given when requested when you have a negligence, comparative negligence situation between the plaintiff and the defendant, and I’m sure you all are going to argue in your closing arguments it was the parent’s negligence for not bringing the child in as soon as they should have.
MR. HOWELL: Well, we haven’t raised comparative negligence and the defense is not an issue.
THE COURT: I understand.
MR. HOWELL: I don’t think it’s a concurring cause. It’s no negligence. I mean, we did what we had to do, then ■you have to rely on the parents to do what they are supposed to do. That’s the whole tenor of the case.
MR. EDWARDS: The testimony, even from the plaintiff’s experts, is the doctor has a right to rely on information given to [sic] the parents, and the question here is whether or not the doctor was negligent based upon the information given so that it’s not being used in an — in the manner in which the cases address.
MR. HOWELL: Plus he’s only been charged for negligence for that August the 12th visit. Anything that happened after that—
THE COURT: Let me tell you candidly what concerns me about this charge. The charge, when it was drafted, was intended only to apply in concurring cause situations.
Several courts in the last year have held it’s error in situations where we never believed it was intended to be used not to give the charge when it was requested.
Now, I agree with you, I think it’s— there’s — I don’t think it belongs in this case, but I don’t think it can hurt you to give it, and I don’t want to create reversible error if I can avoid it.
If you want to not give it and take that chance, I’ll do it, but I’m just concerned that they are going to go off on a tangent if this goes off on appeal, if you win, if it goes up on appeal.
MR. HOWELL: Where is the charge? THE COURT: Here. Here it is.
MR. HOWELL: There isn’t any evidence of concurring negligence here. Even the parents, if they are negligent at all, it came afterward.
THE COURT: You want me not to give it?
MR. HOWELL: I don’t think it's appropriate in this case.
THE COURT: Do you want me not to give it?
MR. HOWELL: Yes.
THE COURT: I’m going to deny it. I agree with you. I don’t think it’s appropriate. I’m just warning you.
MR. HOWELL: All right. We’ll take that chance.
THE COURT: All right.
MR. LOFTIN: Your Honor, they are certainly going to argue, I’m sure, that to the jury that the parents were at fault here, even though they have not pled any contributory negligence or comparative negligence or anything.
*517 THE COURT: But, see, that doesn’t make it a concurring cause unless the defendant is also at fault, and it has to operate at the same time as the defendants’ negligence.
And if the only possible negligence of the defendant occurred on August 12th and the defendant — and the plaintiffs, the parent’s alleged failure to act reasonably occurred subsequent to August 12th, that’s not a concurring cause.
It may be an intervening cause, but it’s not a concurring cause, and I don’t think it’s appropriate. I’m going to reject it. MR. HOWELL: Okay.
Assuming arguendo that the concurring cause instruction should have been given, the failure to give that instruction under the facts and circumstances of this case was harmless and does not constitute reversible error. One of only two cases cited by the majority that involved a malpractice action for misdiagnosis as in the instant case is Wilson v. Boca Raton Community Hospital, Inc., 511 So.2d 313 (Fla. 4th DCA), review denied 519 So.2d 988 (Fla.1987). In Wilson the court affirmed the trial court’s refusal to give Standard Jury Instruction 5.1(b) on concurring cause. The court held that although there was clearly concurring negligence in that case the failure to give the concurring negligence instruction was not reversible error saying:
Clearly, what was before the jury was the questions of whether the treating physician’s misdiagnosis was brought about because of the patient’s insistence he did not ingest parquet and whether death was certain to occur in any event by the time the patient showed up in the emergency room. Thus, while the failure to give a concurring cause instruction may have been error, it was not reversible because we see no “reasonable possibility that the jury could have been misled by the failure to give the instruction.”
Id. at 314. (Emphasis added.) Likewise, there is no possibility that the jury could have been confused or misled by the failure to give the concurring negligence instruction in the instant case. As pointed out by the committee note, instruction 5.1(b) “only negates the idea that the defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage.” There is no way the failure to give a concurring negligence instruction in this cause could have confused or misled the jury. The only negligence alleged was the failure of the defendant doctor to diagnose appendicitis and the jury could not possibly believe that the fact that the minor plaintiff had appendicitis negated or excused the doctor’s liability for failure to diagnose the appendicitis.
The majority also states that the concurring cause instruction is appropriate when the plaintiff is charged with comparative negligence. Admittedly there are some cases cited by the majority which support this statement. However, even if these cases are correct they are totally inapplicable to the instant case. There were no allegations of comparative negligence in the pleadings in this case. Comparative negligence was not an issue set forth in the pretrial order. There was no proof of comparative negligence by the defendant and no argument was made that the plaintiffs were guilty of any comparative negligence. The issue of comparative negligence was never raised in this case, and the cases relied upon by the majority involving comparative negligence are therefore inapplicable. Higgins v. Johnson, 434 So.2d 976 (Fla. 2d DCA 1983), the only other-misdiagnosis malpractice case cited by the majority, was a comparative negligence case and for that reason is inapplicable. In addition, Higgins also involved an intervening cause and the court held that the failure to give Instruction 5.1(c) on intervening cause was error.
Comparative negligence by a plaintiff in no way negates the defendant’s liability, it merely reduces the damages that can be recovered by a plaintiff. For that reason comparative negligence is not concurring negligence under the concurring negligence instruction and the notes on use for that instruction.
*518 Note three in the majority opinion implies that a jury instruction on nondelega-ble duties would be applicable on a retrial of this case if requested. In my opinion the court should not give gratuitous, unsolicited legal advice on an issue not before it, particularly when, at least in my opinion, it is erroneous. The Irving case cited as authority for the footnote does not bear any factual resemblance to the instant case. Instead it involved the liability of a hospital for the acts of an independent contractor physician in its emergency room. The court held that when a hospital clothes a person with apparent authority to treat incoming patients the hospital may not escape its contractual liability by delegating performance under a contract to an independent contractor. It is well-established law that under those circumstances the hospital has a nondelegable duty to the patient. Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987); Arango v. Reyka, 507 So.2d 1211 (Fla. 4th DCA 1987).
The able trial judge fairly presided over a complicated three day trial and correctly decided the issues of law presented to him. A jury verdict supported by competent substantial evidence was rendered and the judgment on that verdict was approved by the trial judge on motion for new trial. I would affirm on all issues.

. The evidence regarding Dr. Abrahamson's qualifications and defense counsel's closing argument may have convinced the jury that Dr. Abrahamson was a professional medical witness rather than a practicing medical expert.