SAFEWAY STORES, INC., Plaintiff–Appellant–Cross–Appellee,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant–Appellee–Cross–Appellant.

Nos. 94–15241, 94–15273.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1995.

Decided Aug. 23, 1995.

Fredric J. Zepp, Charles S. Treat, Latham & Watkins, San Francisco, CA, for plaintiff-appellant-cross-appellee.

Thorn Rosenthal, Cahill Gordon & Reindel, New York City; David B. Paynter, Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, CA, for defendant-appellee-cross-appellant.

Before: SNEED, CANBY, and FERNANDEZ, Circuit Judges.

SNEED, Circuit Judge:

Safeway Inc. ("Safeway") appeals and National Union Fire Insurance Company of Pittsburgh ("National Union") cross-appeals from the district court's judgment in this insurance coverage dispute over the settlement of several class actions against Safeway. Safeway contends that the district court erred by (i) holding that a large dividend paid out as part of the settlement was not a loss covered by Safeway's insurance policy, (ii) allocating one-quarter of the settlement and defense costs to Safeway, (iii) dismissing Safeway's other claims against National Union, and (iv) denying Safeway prejudgment interest. National Union argues that, for a number of reasons, all of Safeway's claims should be barred.

For reasons explained below, we reverse the district court's allocation of one-quarter of the settlement and defense costs to Safeway and its denial of prejudgment interest. In all other respects, the district court's judgment is affirmed.

## I.

### FACTS & PROCEEDINGS BELOW

Safeway filed this suit against National Union seeking reimbursement under its directors and officers liability insurance policy ("D & O policy") for the costs of defending against and settling five class-action lawsuits. The suits were brought as a result of the leveraged buyout ("LBO") of Safeway by Kohlberg Kravis Roberts & Co. ("KKR"). The D & O policy contains a corporate reimbursement provision, which covers Safeway for expenditures incurred through indemnification of its officers and directors for the defense and settlement of claims against them.

### A. The LBO

The Dart Group Corp. ("Dart") launched a hostile takeover attempt by acquiring 5.9 percent of Safeway's stock in May 1986. On July 9, Dart commenced a tender offer for all shares of Safeway stock at $58 per share. Safeway in turn sought a white knight in the form of KKR, and the two companies entered into negotiations regarding the possibility of an LBO. Safeway's board of directors provided confidential business information to KKR, but, at KKR's insistence, withheld it from Dart. On July 21, Dart raised its offer to $64 per share. Dart refused to up its price further without access to Safeway's confidential business information and protested the board's favoritism towards KKR in the bidding process.

Safeway's board rejected Dart's initial $58 per share tender offer on July 22. The board then voted to approve KKR's proposal, and on July 25, Safeway and KKR executed a Merger Agreement that set out the terms of the LBO.[1] Under the agreement's terms, KKR was to purchase up to 73 percent of Safeway's stock in a tender offer at $69 per share; the remaining shares would later be exchanged for debt securities and warrants. Safeway was required to pay a $15 million signing fee to KKR and agreed that, if the deal fell through, it would pay a $45 million termination fee as well.

The Merger Agreement authorized Safeway to pay its regular quarterly dividend of $26.2 million. Because the anticipated record date would fall after the closing date of KKR's tender offer, KKR was expected to receive 73 percent of that dividend.

### B. The Lawsuits and the Settlement

Following announcement of the LBO, six class-action lawsuits were filed against Safeway on behalf of its shareholders, four in state court in California and one in Maryland, and one in federal district court in California. The complaints all alleged that Safeway's directors and officers had breached their fiduciary duty to the shareholders by their conduct in approving the KKR merger, and that KKR had aided and abetted their breach of fiduciary duty.[2]

---

**1.** Only after Safeway entered into this agreement was Dart given access to Safeway's confidential business information.

**2.** The federal complaint also alleged violations of federal securities laws and RICO.

In the course of settlement negotiations, Safeway and the plaintiffs in five[3] of the class actions entered into a Memorandum of Understanding. Under its terms, Safeway agreed to change its Merger Agreement with KKR so that the record date for a portion of Safeway's quarterly dividend would occur prior to the closing of KKR's tender offer, thereby resulting in payment to current shareholders rather than to KKR. Safeway also agreed not to oppose the class attorneys' application for fees and disbursements of up to $1.825 million. In return, all claims against Safeway and KKR would be dismissed with prejudice. The final settlement, however, remained subject to plaintiffs' completion of discovery.

As agreed, KKR and Safeway modified their Merger Agreement so that the dividend was paid early, and their merger deal closed in November 1986. After the plaintiffs completed discovery, the parties entered into a formal settlement agreement in May 1987, which was approved by the California state court in September.[4] The agreement reflected the terms set out in the Memorandum of Understanding.

C. *Safeway's Suit Against National Union*

Thereafter, Safeway demanded coverage of the settlement by National Union, which refused it. Safeway brought suit in federal district court seeking reimbursement of $11.5 million[5] for the early dividend, approximately $1.8 million in plaintiffs' attorney's fees and costs (the "settlement costs"), and approximately $230,000[6] in defense costs and attorney's fees (the "defense costs"). Safeway also alleged breach of contract, breach of the covenant of good faith and fair dealing, and violation of California Insurance Code § 790.03, and requested punitive damages.

In a series of orders,[7] the district court, presided over by District Judge Jensen, ruled on the parties' summary judgment motions as follows. The court granted National Union's motion for summary judgment on the $11.5 million dividend, finding that Safeway could not show that it constituted a covered loss under the D & O policy. Summary judgment was also granted in favor of National Union on Safeway's claims of breach of good faith and fair dealing and violation of California's insurance code, and Safeway's prayer for punitive damages was stricken. The district court denied National Union's motion to bar recovery by Safeway for failure to indemnify its officers and directors, finding that National Union had not shown that Safeway failed to comply with the indemnification procedures required by Maryland law.

The court granted Safeway's motion on the settlement and defense costs, holding that both were covered losses. Nevertheless, the court ruled that the $1.8 million in settlement costs and $230,000 in defense costs would be allocated three-quarters to the covered directors and officers (and thus paid for by National Union under the D & O policy) and one-quarter to Safeway and KKR. The result was approximately $1.5 million payable by National Union, minus the $1 million policy deductible, resulting in judgment for Safeway of about $500,000.

Safeway timely appeals and National Union timely cross-appeals. The district court entered a final judgment in the case on January 5, 1994. Accordingly, this court has jurisdiction under 28 U.S.C. § 1291.

## II.

### DISCUSSION

All of the issues in this case were decided on summary judgment. A grant of summary judgment is reviewed *de novo*. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to the nonmoving

---

3. The sixth suit had been dismissed without prejudice.

4. The federal action was dismissed shortly thereafter.

5. This amount represents 73% of the early dividend, which would otherwise have gone to KKR.

6. This amount was reduced from $342,000 after Safeway corrected it to exclude billings for services rendered to KKR.

7. The orders were issued on March 31, 1992, October 22, 1992, and January 5, 1994.

party, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## A. *$11.5 Million Dividend*

Safeway contends that the $11.5 million early dividend is a loss covered by the terms of the D & O policy. We agree with the district court that the dividend is not so covered.

 It is difficult to see how a corporation's payment of a dividend could ever be a "loss" under the terms of an insurance policy.[8] Neither the owners of that corporation nor its directors suffered a loss. The effect of a dividend is simply to transfer corporate profits from one part of the corporation to another, that is, from the purse of the corporate entity into the pockets of the corporation's owners, the shareholders. *See* 11 Timothy P. Bjur & James Solheim, *Fletcher Cyclopedia of the Law of Private Corporations* § 5318, at 624–25 (1995). In this context, it is absurdly formalistic to view the corporation and its shareholders as separate entities:

> [C]orporateness signifies not a fictitious legal entity which is separate and apart from the body of shareholders, but rather that a corporate personality has been attributed to that body of shareholders. Their joint property is owned by them in their corporate personality, and their joint obligations arising out of the corporate business are owned by them in their corporate personality.

Robert S. Stevens, *Handbook on the Law of Private Corporations* 789 (2d ed. 1949). Safeway is not entitled to reimbursement for a payment made, in essence, to itself.

 Furthermore, the fact that Safeway, by action of its directors, arranged to pay the dividend to its shareholders, rather than to

KKR as originally anticipated, is of no relevant consequence. It could make no difference to the "corporate personality" Safeway *who* received the dividend; once the dividend was declared, it became a corporate obligation that Safeway had to meet in any event. *Fletcher Cyclopedia of Corporations, supra,* § 5322, at 639–40. In effect, therefore, the settlement did not—and could not—result in an $11.5 million loss because Safeway was obliged to pay out the dividend in due course, with or without the settlement. Only Safeway's shareholders could have complained had they established that the directors sold their assets too cheaply. This possibility was forestalled by paying them the $11.5 million dividend.

Thus, we agree with Judge Jensen's analysis that the early payout of the dividend essentially amounted to KKR's upping its purchase price for Safeway by $11.5 million. Under the explicit terms of the settlement agreement, "the plaintiff shareholders released their claims against [Safeway and KKR] in consideration of a direct benefit provided to them by KKR's acceptance of a detrimental change to its merger agreement with Safeway."[9] Under this view, the dividend, if a "loss" to anyone, was KKR's, not Safeway's, and could not be claimed under Safeway's insurance policy.

## B. *Allocation of Settlement Costs*[10]

 Before turning to the allocation issue, we address a preliminary matter. Given our decision that the dividend is not a covered loss, National Union urges this court to conclude that Safeway, that "fictitious legal entity," as Dean Stevens put it, is also not entitled to recover any of the settlement costs under the D & O policy. We reject this "no harm, no foul" argument. We agree with the district court that Safeway did pay the plain-

---

8. The plain meaning of the term "loss" requires that Safeway suffer a financial detriment. *See International Ins. Co. v. Johns,* 874 F.2d 1447, 1454 (11th Cir.1989) (finding that shortening the term of a consulting agreement, which would reduce the amount of future payments by an indefinite amount, was sufficient to constitute a covered loss under a D & O policy; the court reasoned that "a 'loss,' at least under that word's ordinary meaning, appears to have resulted").

9. Excerpts of Record of Plaintiff-Appellant Safeway Inc. ("E.R.") at 169, p. 14.

10. Again, the settlement costs consist of the $1.8 million in plaintiffs' attorney's fees that Safeway paid as part of the settlement agreement.

tiffs' attorney's fees pursuant to the settlement agreement. The lawyers got the money, not the shareholders. Unlike the dividend, therefore, the settlement costs were an actual out-of-pocket loss to Safeway incurred in defense of its directors and officers. Accordingly, we affirm that the settlement costs, and the defense costs as well,[11] are covered by the D & O policy.

■ Now we turn to allocation. Safeway argues that the district court's decision to allocate one-quarter of the settlement costs to Safeway and KKR lacks any legal or factual basis. In particular, Safeway contends that because neither Safeway nor KKR faced any potential liability independent of the liability of Safeway's officers and directors, *any* allocation was improper. We agree and reverse the grant of summary judgment on this issue.

Our holding is based largely on our recent decision in *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir.1995), *amended*, No. 93–35495, slip op. 9325 (9th Cir. Aug. 1, 1995), which was handed down after final judgment by the district court was entered in this case. In *Nordstrom*, this court adopted the "larger settlement rule" on facts similar to those at issue here. As we make clear in the following discussion, *Nordstrom* is controlling.

### 1. *The Larger Settlement Rule.*

■ Under the larger settlement rule, a corporation is entitled to reimbursement of all settlement costs where the corporation's liability is purely derivative of the liability of the insured directors and officers. The leading case on the rule is *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir.1990).[12] There, Judge Posner reasoned, "To allow the insurance companies an allocation between the directors' liability and the corporation's derivative liability for the di-

rectors' acts would rob [the corporation] of the insurance protection that it sought and bought." *Id.* at 368. Thus, "allocation is appropriate only if, and only to the extent that, the defense or settlement costs of the litigation were, by virtue of the wrongful acts of *uninsured* parties, higher than they would have been had only the insured parties been defended or settled." *Raychem Corp. v. Federal Ins. Co.*, 853 F.Supp. 1170, 1180 (N.D.Cal.1994) (emphasis added).

### 2. *The* Nordstrom *Decision.*

In *Nordstrom*, the insurer appealed from the district court's grant of summary judgment requiring the insurer to cover the entire settlement sum and costs resulting from a class action against Nordstrom. The class-action complaint had named both Nordstrom and the insured officers and directors as defendants. The insurer argued that allocation should be based on proportional fault, so that even if the insureds would be found liable on all counts, the settlement costs should still be allocated between Nordstrom and the insureds "where there is some independent basis, not derivative of the officers' and directors' liability, for holding the corporate entity liable." 54 F.3d at 1432.

This court first articulated the correct approach for determining allocation: "[W]e consider the particular policy in question to determine which rule best effectuates the reasonable expectations and intentions of the parties under the insurance contract." *Id.* at 1432. That said, we rejected the insurers' argument based on the language of the policy, and instead found that the larger settlement rule of *Harbor* was appropriate. *Id.* at 1433. As we explained:

[T]he D & O policy expressly provides coverage for "all loss ... which the Insured Person has become legally obligated to pay on account of any claim ... for a

---

11. National Union conceded at oral argument that the defense costs are covered by the D & O policy.

12. *Harbor* involved the settlement of two securities fraud suits, one brought against directors, officers, and employees identified only as "John Does," and the other against the corporate entity and its directors, who were listed by name. The

Seventh Circuit held that as between the corporation and its insured directors and officers, all settlement costs should be allocated to the directors and officers. 922 F.2d at 368. Only if it were determined on remand that some portion of the settlement was due to the actions of uninsured persons would the corporation's reimbursement be reduced. *Id.* at 367.

Wrongful Act committed ... [by] such Insured Person(s) [during the Policy Period].” Under this provision, the parties would expect that [the insurer] would be responsible for any amount of liability that is attributable in any way to the wrongful acts or omissions of the directors and officers, *regardless of whether the corporation could be found concurrently liable on any given claim under an independent theory.*

*Id.* (emphasis added). Therefore, the settlement costs were fully recoverable under the policy, unless the insurer could show that the corporation's liability had increased the amount of the settlement:

Only [1] if the corporation were liable for a claim for which the directors and officers lacked any responsibility, or [2] if the corporate liability increased the amount of loss, would the amount of liability exceed that amount for which [the insurer] was “legally obligated” to pay. *See Harbor,* 922 F.2d at 368; ... *Raychem Corp. v. Federal Ins. Co.,* 853 F.Supp. 1170, 1182–83 (N.D.Cal.1994) (under California law, adopting the larger settlement rule for application to case arising under a similar policy).

*Id.* (citation omitted) (emphasis added). The *Nordstrom* court found that, on the facts of the case, Nordstrom's liability was wholly concurrent with the liability of its officers and directors. *Id.* at 1433. Therefore, the D & O policy covered the entire settlement amount. *Id.*

3. *Application of* Nordstrom.

■ Applying *Nordstrom* to the facts of this case, we find that the larger settlement rule “best effectuates the reasonable expectations and intentions” of Safeway and National Union under the D & O policy. *Id.* at 1432. The language of Safeway's D & O policy is similar to the policy in *Nordstrom:* “This policy shall ... pay on behalf of the Company ... Loss ... *arising from any claim* ... against ... a Director or Officer ... of the Company, by reason of any Wrongful Act[.]”[13] In fact, if anything, the D & O policy language offers broader cover-

age than the policy in *Nordstrom,* which provided for “all loss ... which the Insured Person has become *legally obligated to pay* on account of any claim ... for a Wrongful Act....” *Id.* at 1429. (emphasis added).

Moreover, we hold that the settlement costs did not include any amount of independent liability on the part of Safeway or KKR. *Id.* In so holding, we “only consider the claims actually settled, which are defined by the allegations in the complaint.” *Id.* at 1433. It is clear that Safeway was not the target of any claims independent of its officers and directors. Therefore, none of the settlement or defense costs can be allocated to Safeway. *Id.* at 1432–33; *see also Harbor,* 922 F.2d at 368.

National Union argues, however, that KKR faced significant exposure, and therefore allocation was appropriate. The only allegation against KKR was that it aided and abetted the directors' and officers' breaches of fiduciary duty. The district court found that the risk of liability to KKR under this theory was “quite circumscribed.”[14] Nevertheless, the court allocated 25 percent of the settlement and defense costs to Safeway and KKR.

Under *Nordstrom,* that allocation was improper. True, KKR was subject to potential liability independent of Safeway's directors and officers, not merely the derivative liability that Safeway faced. However, whatever liability KKR might have would be *concurrent* with the liability of Safeway's officers and directors: KKR could not be liable for aiding and abetting their breach of fiduciary duty unless the Safeway officers and directors had indeed breached that duty. *See Nordstrom,* 54 F.3d at 1434 (holding that whatever direct corporate liability Nordstrom had for fraud would be concurrent with director and officer liability, since the directors and officers were liable for authorizing the fraud). There was no showing that KKR's potential concurrent liability increased the amount of the settlement. *See id.* at 1433. The district court acknowledged that such liability was very unlikely.

**13.** E.R. at 227, exh. 1, p. 1 (emphasis added).

**14.** E.R. at 239, p. 12.

Safeway has thus satisfied its burden of showing that the D & O policy covers the settlement costs; National Union "has not demonstrated any genuine issue of material fact as to whether [KKR] may have incurred liability that was not concurrent with that of the insured directors and officers so as to preclude summary judgment." *Id.* at 1436. Reversal of the district court's grant of summary judgment on the allocation issue is therefore warranted. *See id.*

National Union attempts to circumvent this result by contending that the D & O policy *mandates* allocation between Safeway and its officers and directors.[15] The language of ¶ 6(b) of the policy is not mandatory; it requires only that the parties "use their best efforts to determine a fair and proper allocation of the settlement amount as between the Company and the Insureds."[16] The district court determined that the clause "requires an allocation *analysis*,"[17] but not necessarily an allocation. This reading comports better with the policy language.

### C. *Allocation of Defense Costs*

Safeway also argues that allocation of its defense costs was improper, since all those costs were related to defense of the officers and directors. The district court lumped settlement and defense costs together in allocating one-quarter of the costs to Safeway.[18] Safeway must also prevail on this issue.

■ "In evaluating whether defense costs should be allocated between the corporation and the insured directors and officers, courts have adopted the 'reasonably related' test."

*Raychem*, 853 F.Supp. at 1182; *see also Continental Casualty Co. v. Board of Educ. of Charles County*, 302 Md. 516, 489 A.2d 536, 545 (1985). Defense costs are thus covered by a D & O policy if they are reasonably related to the defense of the insured directors and officers, even though they may also have been useful in defense of the uninsured corporation. *Raychem*, 853 F.Supp. at 1182.

Safeway has already reduced its claim to exclude fees attributable to the defense of KKR.[19] In addition, National Union conceded at oral argument that the defense costs are covered by the D & O policy. Thus, we find that Safeway's defense costs are reasonably related to the defense of its officers and directors in the class-action suits and are therefore fully covered by the D & O policy, subject to the deductible. The district court's order mandating allocation of the defense costs was in error, and summary judgment on this issue is reversed.

### D. *Indemnification*

■ National Union also claims that Safeway is not entitled to recover any of its settlement or defense costs because it failed to indemnify its directors as required by the D & O policy and Maryland law.[20] We heartily disagree.

The district court also thought it inequitable to defeat Safeway's claims on this basis. First, there is the rule that courts generally attempt to protect the insured's reasonable expectations under insurance policies.[21] Second, the district court noted with apparent

---

**15.** The full text is as follows:

With respect to the settlement of any claim made against the Company and the Insureds, the Company and the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of the settlement amount as between the Company and the Insureds.
E.R. at 227, exh. 1, p. 3.

**16.** Inexplicably, two out-of-circuit district courts have described this language as "explicitly requiring an allocation between the corporation and the insureds." *Caterpillar Inc. v. Great Am. Ins. Co.*, 864 F.Supp. 849, 852 (C.D.Ill.1994); *First Fidelity Bancorp. v. National Union Fire Ins. Co.*, No. 90–1866, 1994 WL 111363, at *12, 1994 U.S.Dist. LEXIS 3977, at *37 (E.D.Pa. Mar.

29, 1994). We disagree with such an interpretation.

**17.** E.R. at 169, p. 20 (emphasis added).

**18.** *See* E.R. at 239, p. 13.

**19.** E.R. at 239, p. 3 n. 2.

**20.** Indemnification, as an internal corporate affair, is governed by the law of the state of incorporation. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985); *Raychem*, 853 F.Supp. at 1177. Safeway is incorporated in Maryland.

**21.** E.R. at 239, p. 9.

distaste that "National Union here seeks to avoid responsibility for exactly the kind of action it advertised it could protect." [22] National Union asserts in conclusory fashion that Safeway did not perform the requisite corporate formalities for indemnification, without specifying what they might be. Safeway contends that it complied with the terms of the D & O policy [23] and with Maryland law,[24] and National Union has not pointed to any evidence to suggest that Safeway failed to do so.[25] National Union also maintains that Safeway is not entitled to reimbursement because it paid the settlement and defense costs directly.[26] Insistence on a meaningless formality of having the directors and officers pay initially and then be indemnified from the assets of Safeway should not be required to secure the coverage National Union sold to Safeway and its other customers.

### E. Bad Faith, Insurance Code, and Punitive Damages Claims

Safeway contends that the district court erred by granting summary judgment in fa-

vor of National Union on its claims of breach of the covenant of good faith and fair dealing, violation of California Insurance Code § 790.03, and by dismissing its prayer for punitive damages. The district court found that Safeway failed to raise a genuine issue of material fact with regard to these claims.[27] National Union was entitled to argue on the basis of its policy as it was written. That it has done with some success.

We, therefore, affirm the court's ruling. On the undisputed facts, Safeway cannot make a showing of bad faith sufficient for either claim. Because summary judgment in National Union's favor on these claims was proper, the district court was correct to strike Safeway's accompanying prayer for punitive damages.

### F. Prejudgment Interest

■ Finally, Safeway argues that it is entitled to prejudgment interest. It maintains that the amount of its damages has been certain and uncontested from the beginning. National Union denies this and points

**22.** E.R. at 239, p. 9.

**23.** The D & O policy itself does not mandate formal indemnification.

**24.** It appears that formal corporate indemnification was not required under applicable Maryland law, either. No cases construing the Maryland statute cited by National Union were discovered. The text does appear to require a corporation to perform one of three formal indemnification procedures in the case of *permissible* indemnification. *See* Md.Corps. & Ass'ns Code § 2–418(b) & (e) (1987). However, the subsection that applies to instances of *required* indemnification apparently does not mandate the formal indemnification process of subsection (e). It provides:

(d) Required indemnification against expenses incurred in successful defense. Unless limited by the charter:
(1) *A director who has been successful, on the merits or otherwise,* in the defense of any proceeding referred to in subsection (b) of this section *shall be indemnified* against reasonable expenses incurred by the director in connection with the proceeding.

Md. Corps. & Ass'ns Code § 2–418(d)(1) (emphasis added). By its terms, subsection (e) is limited to situations involving "[i]ndemnification under subsection (b)," that is, permissible indemnification. It is logical to conclude that in a situation covered by subsection (d), a formal determina-

tion that indemnification is proper would be unnecessary; because the director has been exonerated, or at least not been held liable, no proof of her good faith would be required.
On its face, subsection (d) appears to apply to Safeway's situation. Presumably, a "successful defense" in a settlement (a "proceeding referred to in subsection (b)") occurs where no liability is conceded. Under the terms of the settlement agreement, the Safeway directors denied any liability whatsoever, *see* E.R. at 230, exh. 26, p. A–7 (section R); therefore, they were successful "on the merits or otherwise," and Safeway is required to indemnify them under subsection (d).

**25.** We note that the record shows that Safeway amended its by-laws to provide broader indemnification and entered into indemnification agreements with all its directors in anticipation of litigation over the merger. *See* E.R. at 227, exh. 5, p. 17, & exh. 6.

**26.** This argument has been roundly rejected by the courts. *See, e.g., Wayne County Neighborhood Legal Servs. v. National Union Fire Ins. Co.,* 971 F.2d 1, 4 (6th Cir.1992); *Harbor,* 922 F.2d at 366; *Ameriwood Indus. Int'l Corp. v. American Casualty Co.,* 840 F.Supp. 1143, 1158 (W.D.Mich.1993).

**27.** E.R. at 195, p. 18, 20.

to the issue of allocation, which it insists made the amount of damages uncertain. We hold that Safeway was entitled to prejudgment interest and reverse the judgment of the district court on this issue.

 In a diversity case, state law controls the award or denial of prejudgment interest. *Landsberg v. Scrabble Crossword Game Players, Inc.,* 802 F.2d 1193, 1200 (9th Cir.1986). Both parties agree that the applicable statute is California Civil Code § 3287. The question is whether subsection (a) or (b) of that statute applies. National Union insists on subsection (b), while Safeway relies on (a).

Section 3287(a) provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day...." Cal.Civ.Code § 3287(a) (1970). Under subsection (a), "[p]rejudgment interest *must* be granted as a matter of right if damages are certain or ascertainable...." *E.L. White, Inc. v. City of Huntington Beach,* 138 Cal.App.3d 366, 377, 187 Cal.Rptr. 879, 887 (1982) (emphasis added). Subsection (b), by contrast, gives the court discretion to award such interest to a person "who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated." Cal.Civ.Code § 3287(b).[28]

 Under section 3287(a), damages are considered certain or capable of being made certain "where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Fireman's Fund Ins. Co. v. Allstate Ins. Co.,* 234 Cal.App.3d 1154, 1173, 286 Cal.Rptr. 146, 158 (1991) (quoting *Esgro Central, Inc. v. General Ins. Co.,* 20 Cal.App.3d 1054, 1060, 98 Cal.Rptr. 153, 157 (1971)); *see also Stein*

*v. Southern Cal. Edison Co.,* 7 Cal.App.4th 565, 571, 8 Cal.Rptr.2d 907, 911 (Cal.App. 1992). California courts have interpreted section 3287(a) to "permit recovery of interest on damages recovered by an insured from the insurer ... where the insured had ... furnished the insurer with data from which the loss could be ascertained and where such data was not substantially disputed by the insurer." *Executive Aviation, Inc. v. National Ins. Underwriters,* 16 Cal.App.3d 799, 808, 94 Cal.Rptr. 347, 353 (1971) (citation omitted). National Union concedes that Safeway provided documents to support its claims under the D & O policy and apparently does not contest the accuracy of those documents. Nevertheless, National Union contends that Safeway's damages were uncertain because the extent of allocation remained to be decided by the district court.

This argument is unpersuasive. The fact that the amount that National Union was required to pay might be reduced as the result of allocation did not in itself make the amount of damages uncertain. The California courts of appeal have rejected similar arguments in analogous situations. In *E.L. White,* for example, the court held that the parties, an insured (White) and its insurer (Royal Globe), were entitled to prejudgment interest in an indemnity action. 187 Cal. Rptr. at 887. The City of Huntington Beach, from whom they were seeking indemnity, argued that prejudgment interest was improper "because the amount of White and Royal Globe's recovery was uncertain until the trial court made its determination of comparative fault [in the indemnity action]." *Id.* The court rejected this argument:

> Here, White and Royal Globe's claim for indemnity was certain in amount from the date the underlying judgments were satisfied, but was subject to a possible reduction if White was found to have been more than vicariously liable. The possibility of that reduction, or even an actual reduction,

---

**28.** We assume that the district court acted under this subsection in denying Safeway's claim for

prejudgment interest. *See* E.R. at 239, p. 14.

does not render White and Royal Globe's damages any less certain.

*Id.*[29]

Here, as in *E.L. White*, the amount of damages claimed by Safeway was known as of the final settlement of the class-action suits. The fact that National Union disputed the issue of *coverage* does not affect the certainty of Safeway's *damages*. The allocation imposed by the district court reflected its judgment that certain items were not covered by the D & O policy, not the uncertainty of the damages claims themselves. Even with respect to the $11.5 million dividend, the court acknowledged that the dividend was in fact paid out as part of the settlement. This is *not* a situation in which "the *amount* of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant." *Fireman's Fund*, 286 Cal.Rptr. at 158 (emphasis added) (internal quotation and citation omitted). National Union did not dispute the amount of money paid out by Safeway as a result of its settlement; it simply claimed that Safeway could not recover that money as covered losses under the D & O policy.

### III.

### *CONCLUSION*

The district court's judgment allocating one-quarter of the settlement and defense costs to Safeway and KKR is reversed and remanded for entry of summary judgment allocating all settlement and defense costs to National Union. The denial of prejudgment interest is likewise reversed and remanded for a determination of the appropriate award of such interest to Safeway. In all other respects, the judgment of the district court is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED.

29. *See also Hansen v. Covell*, 218 Cal. 622, 629, 24 P.2d 772, 775–76 (1933) (holding that plaintiff is entitled to prejudgment interest even though its ascertainable claim was reduced by defendant's unliquidated setoff or counterclaim); *but cf. National Union Fire Ins. Co. v. Showa Shipping Co.*, 47 F.3d 316, 324 (9th Cir.1995) (holding that prejudgment interest is inappropriate under § 3287(a) where defendant disputes not only liability but its liability in proportion to other defendants).